# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BIEN,<br><br>   Plaintiff,<br><br>   v.<br><br>CITY OF FRESNO and DOES 1-10, inclusive,<br><br>   Defendants. | CASE: 1:20-cv-01159-AWI-BAM<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 33) |

Plaintiff John Bien filed this action on August 18, 2020 alleging claims against the City of Fresno and unspecified City of Fresno employees in connection with Plaintiff's arrest outside his residence on December 1, 2019. Doc. No. 1. On March 18, 2021, Plaintiff filed a First Amended Complaint ("FAC"), naming Fresno Police Officer Brad Oliver as a defendant.[1] Doc. No. 19. Defendants answered the FAC (which is the operative pleading in this action) on July 12, 2021, Doc. No. 30, and now bring a motion for summary judgment. Doc. No. 33. For the reasons that follow, Defendants' motion for summary judgment will be denied in its entirety.

## **BACKGROUND**

**A.   Summary of Relevant Evidence**

The evidence adduced by the parties in conjunction with this motion comprises: (i) a putative video recording of Plaintiff's December 1, 2019 arrest, see Doc. No. 34-4; (ii) excerpts

---

[1] The City of Fresno and Oliver are referred to collectively herein as "Defendants."

from Plaintiff's September 26, 2022 deposition, Doc. No. 33-3 at 4; (iii) Plaintiff's declaration in opposition to Defendants' motion for summary judgment, Doc. No. 34 at 3; (iv) excerpts from the November 9, 2022 deposition of Plaintiff's expert, Roger Clark, id. at 9 & Doc. No. 34-3 at 1; and (v) a joint statement of stipulated facts. Doc. No. 33-4. In addition, Defendants refer to certain allegations in the FAC. Doc. No. 33-3 at 2. The following summary of relevant evidence is distilled from these sources:

On December 1, 2019, Plaintiff attended a Christmas Party with his then-fiancée Nicole Torres, Doc. No. 33-3 at 7. After the party, Plaintiff and Torres returned home to the residence they shared. Id. at 11. Torres's 15-year-old son was also present at the residence when Plaintiff and Torress returned. Id.

After returning home, Plaintiff and Torres got into a verbal altercation that involved yelling. Doc. No. 33-3 at 12-13. Plaintiff testified that the altercation lasted no more than two or three minutes and that he did not threaten or place his hands on Torress during the altercation. Id.

Torres asked Plaintiff to leave. Doc. No. 33-3 at 12-13. Plaintiff initially refused to do so but vacated the residence on foot when Torres called the police. Id. at 14. Specifically, Plaintiff testified that he "left out the front door and started walking down the street" "as soon as" Torres told him she was going to "call the cops." Id. at 14-15.

While Plaintiff was walking, a police vehicle containing one police officer pulled over and asked Plaintiff to get in the back. Doc. No. 33-3 at 17. Plaintiff initially declined to do so, but he and the officer had some discussion regarding Plaintiff's altercation with Torres. Id. At the time Plaintiff encountered the police vehicle, Plaintiff was, by his account, about one-half mile from his residence on a street different from the one on which his residence was located. Id. Plaintiff was ultimately transported back to his residence in the police vehicle. Id. at 18. He went voluntary, without coercion or handcuffs. Id. at 19.

Plaintiff interacted with two officers after returning to his residence: Oliver and the officer who picked him up. Doc. No. 33-3 at 21. There were also a few other additional people (not police officers) at the residence by the time Plaintiff returned. Id.

Plaintiff spoke with one or both officers in front of his home for approximately 30 minutes.

2

Doc. No. 33-3 at 22-23; Doc. No. 34 at 4:5-12. Plaintiff testified that he did not make any threats or engage in any acts of violence during the period. Id. The officers eventually arrested him. Doc. No. 33-2 at 4:7-13. Plaintiff testified that he "was never told that [he] was going to be put under arrest," Doc. No. 33-3 at 22-23, and that he did not realize that he was being placed under arrest "until one of [the officers] grabbed – grabbed [his] hand." Id. at 23-24. According to Plaintiff, the second officer was the first to grab his hand. Id. at 24. He then "got grabbed by [] Oliver." Id. As he was being grabbed by the officers, Plaintiff said, "Look, what is this for? What – what's going on?" Id. He was then told "you're under arrest" or words to that effect. Id. Plaintiff testified that, at that point, Oliver grabbed his neck, threw him "backwards" and "down on the ground," and choked him for "at least 10, 15 seconds" while "saying stuff" in his ear. Id. at 26.

Plaintiff contends that Oliver used a "carotid hold' on his neck to throw him to the ground, and that he could have been killed or permanently injured. Doc. No. 34 at 4:5-12. Plaintiff also testified that he "really couldn't even breath on the ground." Doc. No. 33-3 at 28. Plaintiff was then handcuffed, picked up and walked to the police vehicle. Id. at 27. Plaintiff asserts that he did not resist in any fashion while these actions took place, id. at 26-27, and states that he did not recall either officer showing or pulling a weapon during the arrest. Id. at 30. Plaintiff claims that the arrest was captured by the security camera at his residence. Doc. No. 34 at 1:23-25. He has lodged that video with the Court in opposition to this motion. Doc. No. 34-4.

Plaintiff's expert witness, Roger Clark, testified that the police officers had an obligation, under section 841 of the California Penal Code to inform Plaintiff that he was under arrest before detaining him. Doc. No. 34 at 13. Section 841 states as follows:

> The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or the person to be arrested is pursued immediately after its commission, or after an escape.
>
> The person making the arrest must, on request of the person he is arresting, inform the latter of the offense for which he is being arrested.

Cal. Penal Code § 841. Clark also testified that the video of the arrest showed Oliver locking Plaintiff's carotid with his left arm and right arm before yanking Plaintiff, spinning Plaintiff and

3

ultimately falling with Plaintiff to the cement. Doc. No. 34 at 14-15. Finally, Clark testified that this use of force violated the policy of the Fresno Police Department and "national standards" as to the type, degree and duration of force used in arrests. Id. at 19.

Plaintiff testified that his "throat was hurting" after the arrest due to the choking and that his "knee was really scratched up" and "swelling." Doc. No. 33-3 at 28. Plaintiff was taken to the hospital following the arrest. Doc. No. 33-4 at 2:12. One of Plaintiff's knees was cleaned with antiseptic at the hospital, but Plaintiff does not recall receiving any other treatment at the hospital. Id. at 2:13-15. Plaintiff has not since received any other treatment for injuries relating to the arrest. Id. at 2:16-18.

Plaintiff states that he was charged only with "resisting arrest" and that the district attorney dropped the charge. Doc. No. 34 at 4:17-21. Plaintiff also states that Oliver bullied him while they were students together at Bullard High School and that he believes Oliver "assaulted" him because Oliver "hates" him. Id. at 4:12-17.

At some point, Torres requested an emergency protective order ("EPO"). Doc. No. 33-3 at 22. Plaintiff's understanding is that the EPO required Plaintiff to stay away from Torres for a period of five days. Id. The parties disagree as to when the EPO was issued. Plaintiff contends that the EPO "was only issued after [he] had been attacked and arrested." Doc. No. 34-1 at 2:2-5. Specifically, Plaintiff states that nobody told him prior to his arrest that an EPO had been requested and that he was not served with the EPO until after his arrest. Doc. No. 34 at 3:26-4:4. Defendants, for their part, contend that the EPO was "issued against Plaintiff by a judicial officer while [] Oliver was at the scene," Doc. No. 33-1 at 14:3-4, and that "it is reasonable to assume that the EPO was issued prior to or near the time of [Plaintiff's] arrest" because Plaintiff was "served with a copy of the EPO while in custody." Doc. No. 36 at 4:24-28.

**B.     Relevant Procedural History**

This action was filed on August 18, 2020. Doc. No. 1. The Court granted Defendants' motion to dismiss the Complaint on February 26, 2021, Doc. No. 18, and Plaintiff filed his FAC on March 18, 2021, alleging claims for: (1) Unreasonable Search and Seizure – Detention and Arrest against Oliver pursuant to 42 U.S.C. §1983; (2) Unreasonable Search and Seizure –

4

Excessive Force against Oliver pursuant to 42 U.S.C. §1983; (3) Unreasonable Search and Seizure – Denial of Medical Care against Oliver pursuant to 42 U.S.C. §1983; (4) Substantive Due Process against Oliver pursuant to 42 U.S.C. §1983; (5) Municipal Liability for Unconstitutional Custom, Practice or Policy against the City of Fresno pursuant to 42 U.S.C. §1983; (6) False Arrest/False Imprisonment against all Defendants; and (7) Battery against all Defendants. Doc. No. 19. Plaintiff dismissed his third and fifth claims for relief by stipulation on May 4, 2021. Doc. Nos. 25 & 26. The instant motion seeks judgment on each of the remaining claims in the FAC. See Doc. No. 33.

## **SUMMARY JUDGMENT FRAMEWORK**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); see Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1079–80 (9th Cir. 2004).

Rule 56(a)[2] provides for "partial summary judgment" on individual claims and defenses, as well as parts of claims or defenses. Fed.R.Civ.P. 56(a). A motion for partial summary judgment is governed by the same standards as a motion for summary judgment. Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011); Jadwin v. County of Kern, 610 F.Supp.2d 1129, 1141 (E.D. Cal. 2009).

The moving party bears the burden of establishing the absence of a genuine issue of material fact, generally by "citing to particular parts of materials in the record," such as depositions, interrogatory answers, declarations, and documents. Fed.R.Civ.P. 56(c); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000). If the moving party does not meet this burden, "[s]ummary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." Henry v. Gill Indus., 983 F.2d 943, 950 (9th Cir. 1993).

If the moving party does meet this burden, the burden then shifts to the opposing party to

---

[2] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

5

1  show a genuine issue of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
2  U.S. 574, 586-87 (1986); see also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, 210
3  F.3d 1099, 1103 (9th Cir. 2000). "Only disputes over facts that might affect the outcome of the
4  suit under the governing law will properly preclude the entry of summary judgment." Anderson v.
5  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

6        In response to a motion for summary judgment, the non-moving party "must do more than
7  simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S.
8  at 586; Liberty Lobby, 477 U.S. at 247-48 ("the mere existence of some alleged factual dispute
9  between the parties will not defeat an otherwise properly supported motion for summary
10 judgment"). "Where the record taken as a whole could not lead a rational trier of fact to find for
11 the non-moving party, there is no 'genuine issue for trial.' " Matsushita, 475 U.S. at 587; Liberty
12 Lobby, 477 U.S. at 248 (a "dispute about a material fact is 'genuine' " where "the evidence is such
13 that a reasonable jury could return a verdict for the nonmoving party").

14       "[A] party opposing a properly supported motion for summary judgment may not rest upon
15 the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that
16 there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 248 (1986) (quoting First National
17 Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288–89 (1968)) (internal quotation marks
18 omitted). If the nonmoving party does not produce enough evidence to create a genuine issue of
19 material fact after the burden has shifted, the moving party is entitled to summary judgment.
20 Fed.R.Civ.P. 56(c); Fritz, 210 F.3d at 1103; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

21                                 **DISCUSSION**

22 **A.  Untimely Opposition**

23       Defendants contend, at the threshold, that Plaintiff's opposition was not filed on time and,
24 therefore, should not be considered by the Court. Doc. No. 36 at 3:3-20. Local Rule 230(c) of the
25 Eastern District of California provides that any opposition to a motion "shall be filed and served
26 no later than fourteen [] days after the motion was filed." L.R. E.D. Cal. 230(c). Further, Local
27 Rule 230(c) states that "failure to file a timely opposition may also be construed by the Court as a
28 non-opposition to the motion." Id.

1    Defendants' motion for summary judgment was filed on January 13, 2023, Doc. No. 33,
2 but Plaintiff did not file his opposition until February 8, 2023, nearly two weeks after the 14-day
3 deadline in Local Rule 230(c). Doc. No. 34. Further, as Defendants note, Plaintiff provides no
4 justification for his failure to comply with the applicable filing deadline.

5    Under different circumstances, the Court might be inclined to disregard the opposition. In
6 this case, however, the opposition was filed nearly three weeks in advance of the noticed hearing
7 date and Defendants have made no attempt to show prejudice due to the late filing. Further,
8 as set forth below, Defendants have generally not met their threshold burden to show "the absence
9 of triable issues." Henry, 983 F.2d at 950. Consequently, it appears that the motion could have
10 failed, in at least some respects, even without a substantive response from Plaintiff. Cf. Fritz, 210
11 F.3d at 1102-03 (where a party moving for summary judgment fails to carry its burden of
12 production, "the non-moving party has no obligation to produce anything").

13   Plaintiff and his counsel are admonished that the Court will take a more jaundiced view of
14 missed deadlines and is unlikely to forgive late filings in the future, given this unjustified
15 transgression. The Court will, however, take Plaintiff's late opposition into consideration in
16 deciding the instant motion.

17 **B.    Defendants' Evidentiary Objections**

18   Defendants object to certain aspects of Plaintiff's declaration in opposition to their motion
19 for summary judgment. Doc. No. 36-1. The Court will address each of these objections in turn.

20   *Objection #1:* "On December 1, 2 019, while at my home, I was attacked by Brad Oliver, a
21 Fresno Police Officer. The attack was captured on my security camera." Doc. No. 36-1 at 2:2-13.

22   Defendants contend that this statement is conclusory, self-serving, vague and ambiguous,
23 and not supported by admissible evidence. The Court disagrees. This is a clear statement
24 consisting of facts, within Plaintiff's personal knowledge, as to events bearing directly on
25 Plaintiff's claims. The objection is OVERRULED.

26   *Objection #2:* "A copy of the security footage is attached hereto as Exhibit A: and
27 incorporated herein by this reference." Doc. No. 36-1 at 2:17-26.

28   Defendants contend that the statement lacks foundation and that the video has not been

7

properly authenticated. Further, Defendants contend that Plaintiff has failed to attest that the recording has not been edited. To the extent such objections have validity, they can be fully resolved at—or prior to—trial and, thus, do not preclude taking the video into consideration on this motion. See Burch v. Regents of University of California, 433 F.Supp.2d 1110, 1120-21 (E.D. Cal. 2006) (even if a document is not properly authenticated, it is improper to raise an objection on that ground "if the party nevertheless knows that the document is authentic" (quoted source and internal quotation marks omitted)); see also Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1551 (9th Cir. 1990) (trial court's consideration of unauthenticated document on summary judgment harmless error where a "competent witness with personal knowledge could authenticate the document"). This objection is OVERRULED.

*Objection #3:* ""At the time I was attacked or prior to the attack, neither officer at my house notified me that anyone had requested an Emergency Protective Order ("EPO") or that one had even been issued. I do not believe an EPO had been issued at the time of my arrest and I in fact was not served with one until after I had been attacked and arrested. At the time of my arrest neither officer told me why they were arresting me or that I was being arrested because an EPO had been issued." Doc. No. 36-1 at 3:1-4:5.

Defendants contend that this statement is conclusory, self-serving, vague and ambiguous, and not supported by admissible evidence. Further, Defendants contend that the timing of the EPO and whether the officers told Plaintiff "why" he was being arrested is "irrelevant and immaterial." The Court finds this objection disingenuous since Defendants themselves suggest that the EPO was issued prior to Plaintiff's arrest and provided a basis for arresting Plaintiff. Showing that the EPO was not issued until after the arrest tends to undercut Defendants' credibility and could support an argument that the EPO was generated after the fact to justify wrongful conduct at the time of the arrest. Similarly, failure to provide Plaintiff with a warning of or explanation for his arrest could go to the question of whether there were grounds for arrest and to the question of whether the force applied to subdue Plaintiff was warranted. Finally, the statement consists of facts, within Plaintiff's personal knowledge, as to events bearing directly on Plaintiff's claims. The objection is OVERRULED.

*Objection #4:* "Prior to attacking me, the officers were at my home for over thirty minutes. While they were at my home I made no threats to either officer. I made no[] [] threats to my ex-fiancé or her son. I never demonstrated any acts of violence toward the officers or my exfiancé. The officers had no basis at any time to believe I posed any type of threat. The Officers walked freely in my home while they were in it and communicated with me the entire time. While the officers were on my property one of the officers was with me the entire time and observed that I never posed a threat." Doc. No. 36-1 at 4:6-23.

Defendants contend that this statement is conclusory, self-serving, vague and ambiguous, and not supported by admissible evidence. Further, they object that "Plaintiff's purported behavior thirty minutes prior to resisting arrest is immaterial and irrelevant." The Court finds this objection disingenuous because Defendants expressly argue (albeit without evidence) that Plaintiff's conduct prior his arrest justified the force used to arrest him. Doc. No. 33-1 at 16:8-1 ("[t]estimony will [] show that, at the scene, Plaintiff threatened the individuals present at his residence in the presence of the officer and even went as far as trying to approach one of them"). At bottom, the statement consists of facts, within Plaintiff's personal knowledge, as to events bearing on Plaintiff's claims. The objection is OVERRULED.

*Objection #5:* "In High School, Officer Oliver did not like me and consistently bullied me. Given Officer Oliver's predisposition toward me I am confident that he assaulted me at my house because he hates me and for no other reason. He used his position as a police officer to continue bullying me even as adults." Doc. No. 36-1 at 5:1-15.

Defendants contend that this statement is conclusory, self-serving, vague and ambiguous, and not supported by admissible evidence. The Court disagrees. The statement consists of facts, within Plaintiff's personal knowledge, that are relevant to Plaintiff's contention that there was no legitimate law enforcement purpose for his arrest or the manner in which it was effectuated. The objection is OVERRULED.

*Objection #6:* "Even after my arrest, the Officers never told me why I was being arrested. Instead, they simply said I was going to be charged with resisting arrest." Doc. No. 36-1 at 5:20-6:4.

9

Defendants contend that this statement is conclusory, self-serving, and not supported by admissible evidence. Further, Defendants contend that whether the officers told Plaintiff "why" he was being arrested is "irrelevant and immaterial." The Court disagrees. These facts are within Plaintiff's personal knowledge and failure to provide Plaintiff with a warning of or explanation for his arrest could go to the question of whether the officers had identified grounds for arresting Plaintiff before the arrest was made and to the question of whether the force applied to effectuate the arrest was necessary. The objection is OVERRULED.

*Objection #7:* "The district attorney dropped all charges and I was never convicted of committing any crime." Doc. No. 36-1 at 6:9-17.

Defendants contend that this is "irrelevant and immaterial to whether the officers had probable cause to arrest Plaintiff or whether they used excessive force in making the arrest." The Court disagrees since probable cause requires an arresting officer to have information indicative of criminal conduct, see Hart v. Parks, 450 F.3d 1059, 1065 (9th Cir. 2006), and Defendants assert that the quantum of force applied in arresting Plaintiff was justified because he was resisting arrest. See Doc. No. 33-1 at 20:3-4. Defendants provide no reason why prosecutorial determinations as to wrongdoing on Plaintiff's part (or a lack thereof) could not go to those issues. See Taylor v. Lemus, 2015 WL 12698306, at *3 (C.D. Cal. June 17, 2015) ("[e]vidence that [] charges were dropped after the district attorney learned of potential impropriety is relevant"). The objection is OVERRULED.

*Objection #8:* "As seen in the video, Officer Oliver used a carotid hold on my neck to throw me to the ground, could have killed me or permanently injured me. I still suffer extreme emotional distress from this incident." Doc. No. 36-1 at 6:18-7:4.

The Court agrees with Defendant that Plaintiff has not established foundation for his testimony that "Officer Oliver used a carotid hold." In that respect, the objection is SUSTAINED (although the Court will consider the testimony of Plaintiff's expert witness on that point). The objection is otherwise OVERRULED because Plaintiff has foundation for testifying as to his emotional state and, in broad terms, as to his belief regarding the potential injurious impact of force applied to him.

**C.     First Claim for Relief: Unreasonable Search and Seizure in Violation of the Fourth Amendment—Arrest and Detention**

Plaintiff's first claim for relief is brought under § 1983 for violation of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable arrest and detention. FAC ¶¶ 27-31.

1. Applicable Law

A seizure results in a constitutional violation only it if is unreasonable. Nelson v. City of Davis, 685 F.3d 867, 978 (9th Cir. 2012). A warrantless arrest by a law enforcement officer "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004).

Probable cause exists when "the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed a crime." Hart, 450 F.3d at 1065. "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction .... Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action." Hernandez v. City of Napa, 781 F.Supp.2d 975, 993 (N.D. Cal. 2011).

2. Analysis

Defendants argue Plaintiff "cannot introduce evidence showing that [] Oliver arrested him without probable cause" because it is undisputed that Oliver was responding to a domestic violence call and "an EPO was issued against Plaintiff by a judicial officer while [] Oliver was at the scene." Doc. No. 33-1 at 14:1-7. These facts alone, Defendants contend, are sufficient for a "reasonable and prudent" person to conclude, "[u]nder the totality of the circumstances," that it was "probable that a crime had been or would be committed." Id. at 14:5-7.

Defendants are incorrect. First, the mere fact that the police officers were responding to a domestic violence complaint does not mean that they had knowledge of "facts and circumstances" sufficient to establish probable cause for arrest. Cf. Courtright v. City of Battle Creek, 839 F.3d 513, 521–23 (6th Cir. 2016) ("although there may be some instances in which a sufficiently

11

reliable phone call to the police may provide *reasonable suspicion* for an investigatory stop, … we have not found any precedential case in which we concluded that a phone call, without any corroborating information, provided *probable cause* for arrest" (citations omitted) (italics original)). Second, Defendants set forth no facts showing that an EPO was issued prior to Plaintiff's arrest. Plaintiff contends that the EPO was not issued until after his arrest and, to the extent it points in one direction or the other, evidence relating to this motion seems to corroborate that contention. If Defendants had evidence showing when the EPO was issued, they should have provided it in support of this motion, particularly since it is hard to understand why Defendants would not have such evidence in their possession. And third, Defendants make no showing that the mere issuance of an EPO necessitates—or justifies—arrest. Scanning the record, the only discussion of what the EPO entails is in Plaintiff's deposition, where Plaintiff states his belief that the EPO barred him from contact with Torres for five days. If that is the case, an EPO appears to be an alternative to (not a predicate for) arrest and detention. The Court cannot find, in other words, that the mere issuance of an EPO makes Plaintiff's arrest reasonable, even assuming the EPO was issued before the arrest occurred.

Plaintiff has set forth evidence, in the form of sworn testimony, that he voluntarily returned home with a police officer without incident; that he remained outside, in the company of a police officer, for the period between his return home and his arrest; and that he did not engage in threats, violent acts or other such conduct in the period immediately preceding his arrest. Further, Plaintiff states that resisting arrest was the sole charge against him (undercutting an inference of actionable wrongdoing prior to the arrest) and that even the resisting arrest charge was ultimately dropped.

Defendants have set forth no creditable evidence negating—or even contradicting—these statements. A reasonable jury could find on this record that there was not probable cause to arrest Plaintiff, and Defendants' motion for summary judgment must therefore be denied as to the first claim for relief.

**D.    Second Claim for Relief: Unreasonable Search and Seizure in Violation of the Fourth Amendment—Excessive Force**

Plaintiff's second claim for relief is brought under § 1983 for excessive force in violation

of his Fourth Amendment right to be free from unreasonable searches and seizures. FAC ¶¶ 27-31.

1.  Applicable Law

All claims that law enforcement officers used excessive force, either deadly or non-deadly, in an arrest, investigatory stop, or other seizure of a citizen are analyzed under the Fourth Amendment and its standard of objective reasonableness. See Scott v. Harris, 550 U.S. 372, 381-83 (2007); Graham v. Connor, 490 U.S. 386, 395 (1989). The pertinent question in excessive force cases is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Graham, 490 U.S. at 397.

This objective inquiry into reasonableness is highly fact specific. See Scott, 550 U.S. at 383; Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010). Courts "first assess the quantum of force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by evaluating a range of factors." Davis v. City of Las Vegas, 478 F.3d 1048, 1054 (9th Cir. 2007). Factors that are considered in assessing the government interests at stake include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010); Davis, 478 F.3d at 1054. Courts also are to consider whether it was feasible to give a warning before using force, and whether a warning was actually given. See Bryan v. MacPherson, 630 F.3d 805, 831 (9th Cir. 2010). "In some cases ... the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005); see Luchtel, 623 F.3d at 980. "[P]olice are required to consider what other tactics if any were available, and if there were clear, reasonable, and less intrusive alternatives to the force employed that militate against finding the use of force reasonable." Nehad v. Browder, 929 F.3d 1125, 1138 (9th Cir. 2019) (internal quotations omitted).

Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396; Wilkinson, 610 F.3d at 550. "The calculus of reasonableness must embody allowance for the fact that police officers are

13

often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97; Wilkinson, 610 F.3d at 550. "Force is excessive when it is greater than is reasonable under the circumstances." Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002).

"[B]ecause questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." Barnard v. Theobald, 721 F.3d 1069, 1076 (9th Cir. 2013) (quoted source and internal quotation marks omitted).

2.  Analysis

Defendants argue that, considering the "totality of the circumstances," "a reasonable officer could easily conclude that Plaintiff presented an immediate threat to [] Oliver's safety, the other officer's safety and the safety of Ms. Torres," because [] Oliver was "responding to a domestic violence call, considered to be a crime of violence"; "Torres, her fifteen year old son and other individuals were at the residence when the officers where there"; and "[t]estimony will [] show that, at the scene, Plaintiff threatened the individuals present at his residence in the presence of the officer and even went as far as trying to approach one of them." Doc. No. 33-1 at 16:8-17. Further, Defendants argue that "Oliver's acts were a minor intrusion at best," Doc. No. 33-1 at 17:2-20, and that Plaintiff cannot show he sustained any major injuries. Id. at 17:23-18:5.

As set forth above, Plaintiff has testified that he allowed himself to be brought back to his residence (after leaving on foot) by a police officer who was fully aware that Torres was still at home, and that Plaintiff remained outside, in the company of a police officer, in the period of approximately 30 minutes immediately prior to his arrest. He has also testified that he did not, during that period, make any threats or engage in violent conduct and that the only crime he was charged with in connection with the events of December 1, 2019 was resisting arrest. Further, Plaintiff testified that the police officers did not inform him that he was under arrest before grabbing his hands and that he was choked and thrown to the cement during the arrest. Video of the arrest, as lodged by Plaintiff, convincingly supports Plaintiff's contentions as to the explosive manner in which his arrest was executed. Finally, Plaintiff offers expert testimony that Oliver put him in a dangerous carotid hold and that the arrest violated Fresno Police Department policy and

national standards with respect to use of force.

As noted above factors that go into excessive force determinations include the severity of the crime at issue, whether the suspect posed a safety threat, and whether a suspect was actively resisting arrest. None of these factors allow for finding, as a matter of law, that excessive force was not applied in connection with Plaintiff's arrest. After reading and rereading the motion papers, the Court still cannot figure out what crime supposedly triggered the arrest. As to the safety issue, it was apparently a police officer who deemed it safe to bring Plaintiff back to the residence (and keep him on site for 30 minutes), and Defendants set forth no evidence contradicting Plaintiff's testimony that he did not threaten anyone or engage in any violent acts in the period between his return home and his arrest. The resisting arrest charge (which was the one and only charge against Plaintiff) was apparently dropped. And a reasonable jury could find, in the Court's view, that force could have been avoided completely had one or both of the officers informed Plaintiff that he was under arrest before making contact with his person, especially since there is evidence indicating that Plaintiff was cooperative when he was approached by the police vehicle, transported home and, in effect, held on his front porch.

Defendants' motion for summary judgment will therefore be denied as to the second claim for relief.

**E.    Fourth Claim for Relief: Violation of Fourteenth Amendment Substantive Due Process Right**

Plaintiff's fourth claim for relief is brought under § 1983 for violation of Plaintiff's right to substantive due process under the Fourteenth Amendment. Doc. No. 19 ¶¶ 46-49. Specifically, Plaintiff alleges that Oliver arrested him in violent fashion solely because Oliver bullied Plaintiff in high school and has disliked him ever since. Id.

1.   Applicable Law

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" United States v. Salerno, 481 U.S. 739, 746 (1987) (quoted sources and internal quotation marks omitted); Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009). In

15

1  other words, the substantive protections of the Due Process Clause of the Fourteenth Amendment
2  are intended to prevent government officials "from abusing their power or employing it as an
3  instrument of oppression." Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoted source
4  and internal punctuation omitted). To state a substantive due process claim, a plaintiff "must plead
5  that the government's action was 'clearly arbitrary and unreasonable, having no substantial
6  relation to the public health, safety, morals, or general welfare.' " Lebbos v. Judges of Superior
7  Ct., 883 F.2d 810, 818 (9th Cir. 1989) (quoted source omitted).

8        The Fourteenth Amendment's "shocks the conscience" standard is different from the
9  Fourth Amendment's reasonableness standard. Tan Lam v. City of Los Banos, 976 F.3d 986, 1003
10 (9th Cir. 2020). Conduct will shock the conscience depending on whether the circumstances were
11 such that actual deliberation by the officer was practical. Id.; Wilkinson, 610 F.3d at 554. If
12 deliberation is practical, the officer's conduct will shock the conscience if the conduct was done
13 with "deliberate indifference." See A.D. v. California Highway Patrol, 712 F.3d 446, 453 (9th Cir.
14 2013); Wilkinson, 610 F.3d at 554. If deliberation is not practical, such as where an officer makes
15 a snap judgment because of an escalating situation, the officer's conduct will shock the conscience
16 if the officer acted with a purpose to harm that was unrelated to legitimate law enforcement
17 objectives. See A.D., 712 F.3d at 453; Wilkinson, 610 F.3d at 554; see also Porter v. Osborn, 546
18 F.3d 1131, 1140 (9th Cir. 2008) ("[i]t is the intent to inflict force beyond that which is required by
19 a legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability
20 under § 1983....") (quoting Davis v. Township of Hillside, 190 F.3d 167, 172 (3d Cir. 1999)
21 (McKee, J., concurring)) (some internal quotation marks omitted).

22       The "purpose to harm" standard is a "heightened" standard and a subjective standard of
23 culpability. See Lam, 976 F.3d at 1003; A.D., 712 F.3d at 453. An officer may act with a
24 legitimate purpose when his objective is self-defense, arrest, or protecting the public, but may act
25 with an illegitimate purpose when his objective is to bully a suspect, "teach the suspect a lesson,"
26 or get even. See Lam, 976 F.3d at 1004; Nehad, 929 F.3d at 1139. "[A]lthough most purpose to
27 harm cases will involve evidence of ulterior motive or bad intent separate and apart from evidence
28 of an unreasonable use of force," some cases might involve a use of force that is "so grossly and

16

1 unreasonably excessive that it alone could evidence a subjective purpose to harm." Nehad, 929
2 F.3d at 1140.

3     2.    <u>Analysis</u>

4     Defendants first argue that summary judgment is warranted as to Plaintiff's fourth claim
5 for relief because excessive force and arrest without probable cause can only give rise to claims
6 under the Fourth Amendment. Doc. No. 33-1 at 18:13-22. As set forth above (and as Defendants
7 implicitly concede), however, excessive force and arrest without probable cause can implicate
8 substantive due process rights under the Fourteenth Amendment, in addition to rights under the
9 Fourth Amendment, where an officer demonstrates "deliberate indifference," See A.D., 712 F.3d
10 at 453, or acts with a "subjective purpose to harm." See Nehad, 929 F.3d at 1140.

11     Here, Plaintiff states that Oliver bullied him in high school and that Oliver has disliked him
12 ever since high school. Such evidence, by itself, might not be sufficient for a reasonable jury to
13 find that Plaintiff has satisfied the heightened, subjective standard of culpability applicable to
14 substantive due process claims involving arrests, but Defendants have failed to set forth evidence
15 justifying either the arrest or the force applied in the arrest. As set forth above, there is no evidence
16 that the EPO was issued before Plaintiff's arrest and regardless, there is no showing that it
17 necessitated—or even provided a valid predicate for—arresting Plaintiff. Similarly, Defendants
18 have failed to identify what crime supposedly triggered the arrest, and it appears that the resisting
19 arrest charge was dismissed, allowing for the inference (which Plaintiff urges) that it was only
20 brought as cover for the police officers' misconduct. Finally, it appears that Plaintiff cooperated
21 with police officers in returning to and waiting outside his residence, and Defendants provide no
22 colorable explanation, in light of such evidence, as to why police officers attempted to physically
23 restrain Plaintiff without first informing him that he was to be placed under arrest.

24     In short, the Court finds that there are genuine disputes as to whether the arrest and
25 concomitant force were related to a legitimate law enforcement objective and as to Oliver's mental
26 state in connection with the arrest and use of force. The motion with therefore be denied as to the
27 fourth claim for relief.

28 **F.**    **<u>Qualified Immunity</u>**

17

1      Qualified immunity protects public officials from a court action unless their conduct violated a constitutional right that was "clearly established" at the time. Felarca v. Birgeneau, 891 F.3d 809, 815 (9th Cir. 2018) (citing City & Cty. of S.F. v. Sheehan, 575 U.S. 600, 611 (2015)). To assess whether qualified immunity attaches, a court asks "two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the officials' conduct violated a constitutional right, and (2) whether the law at the time of the challenged conduct clearly established that the conduct was unlawful." Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The plaintiff must prove both steps of the inquiry to establish the officials are not entitled to qualified immunity. Id. The court may address these steps in any order. Id. at 815-16.

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," as shown in "controlling authority or a robust consensus of cases of persuasive authority." Tuuamalemalo v. Greene, 946 F.3d 471, 477 (9th Cir. 2019) (citing District of Columbia v. Wesby, 138 S. Ct. 577, 590-91 (2018)). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Wesby, 138 S. Ct. at 590. The court must define the right at issue with "specificity" and "not ... at a high level of generality." Gordon v. Cty. of Orange, 6 F.4th 961, 968 (9th Cir. 2021) (citing City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019)). However, an "obviously unlawful" case can "clearly establish" that a constitutional violation occurred "even in novel factual circumstances." Hines v. Youseff, 914 F.3d 1218, 1230 (9th Cir. 2019). It is the Plaintiff's burden to establish that the law was "clearly established." Felarca, 891 F.3d at 815.

Defendants do not—and cannot—dispute that the rights under the Fourth Amendment and the Fourteenth Amendment on which Plaintiff's first claim for relief, second claim for relief and fourth claim for relief are based were "clearly established," with a "clear foundation" in precedent at the time the events at issue occurred. The only question is whether the evidence adduced in connection with this motion, when taken in the light most favorable to Plaintiff, shows that Officer Oliver's conduct violated those rights. As noted repeatedly throughout this order, Defendants offer almost no evidence to support their version of events. Indeed, this motion is based almost entirely

on Plaintiff's deposition testimony, Plaintiff's declaration and Plaintiff's video of the arrest. Collectively, that evidence shows that after returning to his residence, without incident, at the request of a police officer and waiting in front of his home, without incident and in the company of a police officer, for a period of about 30 minutes, Plaintiff was forcefully arrested without verbal warning and in the absence of an underlying crime. The evidence presented at trial may well tell a more complete—and different— story, but for purposes of this motion, the Court finds that Plaintiff's showing is sufficient to establish that qualified immunity does not apply to Oliver in connection with the events of December 1, 2019.

**G.      Sixth Claim for Relief: False Arrest / Imprisonment**

The elements of the tort of false arrest under California law are that: (1) defendant arrested plaintiff without a warrant; (2) plaintiff was harmed; and (3) defendant's conduct was a substantial factor in causing the harm. Carcamo v. Los Angeles County Sheriff's Department, 68 Cal.App.5th 608, 616 (2021). If a plaintiff proves those elements, then the defendant has the burden of persuasion to prove that the arrest was justified. Id. An arrest is justified if the defendant had reasonable or probable cause to believe that plaintiff committed the crime. Id. The standard is objective, based on the information known to the arresting officer. Id. (quoting Gillan v. City of San Marino, 147 Cal.App.4th 1033, 1044 (2007)).

Defendants argue that Plaintiff's claim fails because "Oliver had probable cause to believe that Plaintiff committed a crime." Doc. No. 33-1 at 24:18-20. As set forth above, however, Defendants have made no such showing. Again, Defendants may yet provide a more robust account of what transpired at Plaintiff's residence on December 1, 2019, but the Court cannot grant summary judgment in Defendants' favor on Plaintiff's sixth claim for relief based on the existing record.

**H.      Seventh Claim for Relief: Battery**

Claims under California law for battery by a police officer are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims. Edson v. City of Anaheim, 63 Cal.App.4th 1269, 1272 (1998) (noting that 42 U.S.C. § 1983 is the federal counterpart of state battery actions); Johnson v. County of L.A., 340 F.3d 787, 794 (9th Cir. 2003)

(state law battery claim failed on finding that defendant's force was "not unreasonable"); <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 922 (9th Cir. 2001) (finding that plaintiff's "state law assault and battery claims fail[ed] for the same reason her federal excessive force claim failed").

As set forth above, Plaintiff has set forth percipient testimony, expert testimony and video evidence that, at a minimum, raises a genuine dispute to whether the force applied in his arrest was reasonable under the Fourth Amendment. The motion will therefore be denied as to Plaintiff's seventh claim for relief for the same reason it was denied as to Plaintiff's second claim for relief.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment will be denied in its entirety.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for summary judgement (Doc. No. 33) is DENIED in its entirety. This action is referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated:  March 24, 2023

SENIOR DISTRICT JUDGE